UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
VIS VIRES GROUP, INC.,

                                     Plaintiff,

       -against-

ENDONOVO THERAPEUTICS, INC.
AND ALAN COLLIER,

                                Defendants.
------------------------------------------------------------------------x

Case No.:
(     ) (     )

CV-16 0470

SPATT, J.

SHIELDS, M.J.

PLAINTIFF'S MEMORANDUM OF LAW

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT        N.Y.

★   JAN 29 2016   ★

LONG ISLAND OFFICE

Naidich Wurman LLP
Attorneys for Plaintiff
111 Great Neck Road – Suite 214
Great Neck, New York  11021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                              1

STATEMENT OF FACTS                                                                 1

    Description of the Parties and Nature of the Action                       1
    The Subject Transactions                                                 2

ARGUMENT
  POINT I:  PLAINTIFF HAS ESTABLISHED THE REQUIREMENT
          FOR INJUNCTIVE RELIEF                                            7

    Substantial Likelihood of Success                                        7
    Breach of Contract                                                       7
    Tortious Interference with Contract                                      8
    Irreparable Injury                                                       9
    Balancing of the Equities                                               10
    Waiver of Bond Requirement                                              11

CONCLUSION                                                                        12

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

VIS VIRES GROUP , INC.,                                    Civil Action No.

                          Plaintiff ,

          -against-

ENDONOVO THERAPEUTICS, INC.,
and ALAN COLLIER,

                          Defendants.
------------------------------------------------------------------------x

### PLAINTIFF 'S  MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

The plaintiff, Vis Vires Group, Inc. ("Plaintiff") respectfully submits this Memorandum of Law in support of its motion seeking a mandatory preliminary injunction against the defendants Endonovo Therapeutics, Inc., ("the Corporate Defendant") and Alan Collier, ("the Individual Defendant").

### STATEMENT OF FACTS

A.     Description of the Parties and the Nature of the Action

Plaintiff is engaged in the business of making loans to small-cap public companies such as the Corporate Defendant.  The form of these loans typically involve a Convertible Promissory Note executed by the borrower together with a Securities Purchase Agreement (hereinafter "SPA") and other companion loan documents.  Pursuant to this business model, Plaintiff is enabled to provide small-cap public entities with much needed capital unavailable to them from more conventional sources.  While the pertinent loan documents permit the borrower to prepay

Plaintiff within the first 180 days from the funding of such loans, borrowers rarely avail themselves of that right.  Rather, Plaintiff typically obtains repayment by its exercising its rights to convert the borrower's debt into equity receiving unrestricted common stock of the borrower.

In order to comply with Rule 144 of the Securities Act of 1933 as amended, Plaintiff must wait six months from the funding of a loan to be in a position to obtain unrestricted shares which places Plaintiff at substantial risk since during the tacking period debtor may (i)  be delinquent in its filings to the SEC, the timely filing of which is a predicate to Plaintiff 's conversion rights; or (ii) the company's shares may be illiquid and trading volume insufficient to accommodate Plaintiff 's conversion; or (iii) trading of the company's stock may be halted by the SEC or appropriate exchange.  Should any one or more of the aforementioned situations occur it would render the Notes uncollectable and valueless.

B.    The Subject Transactions

Commencing in June 2015, Plaintiff established a business relationship with the Corporate Defendant, which involved the making of three separate convertible loans.  Each of these loans was reflected in the Corporate Defendant's public filings with the Securities and Exchange Commission ("the SEC"). Each of these loans are virtually identical in documentation consisting of:  (i) a Convertible Promissory Note; (ii) a Securities Purchase Agreement; (iii) Issuance Resolution; (iv) a Resolution by the Board of Directors authorizing the transaction; (v) an Officer's Certificate; and (vi) a Disbursement Authorization.  All documents are executed and delivered to the Plaintiff prior to the funding of each individual loan.  Such loans are unsecured and present a high degree of risk to the lender.

The following represents a list of the loans made by Plaintiff to the Corporate Defendant:

- Note dated June 9, 2015 ("Note 1") in the principal amount of $38,000;

- Note dated July 9, 2015 ("Note 2") in the principal amount of $33,000; and

- Note dated August 10, 2014 ("Note 3" and together with Note 2, collectively, the "Notes") in the principal amount of $33,000.

Note 1 has been prepaid by the Corporate Defendant and is not at issue in this case. None of the other Notes have been paid at all.

Stated differently, Note 2 and Note 3 remain outstanding and in default. As of this date, the Corporate Defendant has not prepaid any of those Notes nor has Plaintiff converted any portion of those debts to equity. This is because the Plaintiff's efforts to do so have been deliberately thwarted by the defendants, who are sophisticated parties that are attempting to rewrite the transactions at issue after receiving the benefits of same.

On or about January 21, 2016, the Plaintiff submitted a Notice of Conversion to the Corporate Defendant's transfer agent, Clear Trust LLC (hereinafter referred to as "Clear Trust").

Clear Trust required a separate and distinct Issuance Resolution from the Corporate Defendant with respect to the amount of stock requested in each Notice of Conversion. The Corporate Defendant is under a contractual duty and obligation to Plaintiff to provide such an Issuance Resolution, and the failure to do so is a material default under the loan documents. Nevertheless, the Corporate Defendant failed and refused to provide the required Issuance Resolution, and the Individual defendant, who is the Chief Executive Officer and in control of the Corporate Defendant, clearly directed the Corporate Defendant not to provide the required Issuance Resolution (in violation of the provisions of the Note and the SPA) in order to manipulate the stock price of the Corporate Defendant.

Thus, Plaintiff has been prevented from exercising its conversion rights under the outstanding Notes and SPAs, as a direct result of the flagrant breaches of contract by the Corporate Defendant.

On January 28, 2016, Plaintiff's attorneys forwarded a letter addressed to the Corporate Defendant and Collier advising them of their default in the obligations under the Notes, and stating that these were intentional acts intended to interfere, hinder and/or delay Plaintiff's rights under the Notes.

In wrongfully resisting Plaintiff's conversion rights, defendants plainly seek to manipulate the price of the Corporate Defendant's shares in the market in flagrant breach of the agreement between these sophisticated commercial parties.  Most significantly if the conversion process is not completed, the entire investment made by the Plaintiff will be lost, as the Corporate Defendant is insolvent from both an asset and income standpoint.  As a result, absent injunctive relief, permitting the conversion process to go forward, the Plaintiff will indeed sustain irreparable and permanent loss.

<u>ARGUMENT</u>

<u>POINT ONE</u>

<u>PLAINTIFF HAS ESTABLISHED THE REQUIREMENT
FOR INJUNCTIVE RELIEF</u>

The total outstanding principal balance due from the Corporate Defendant to Plaintiff  in connection with Note 2 and Note 3 is $66,000.  By reason of the Corporate Defendant's default in its obligations under the Notes and SPAs, and in accordance with the terms of the Notes with respect to each of the loans (Section 3.16 of the Notes), Plaintiff is entitled to the sum of $132,000, together with appropriate default interest and costs of collection, including but not limited to, reasonable attorneys' fees (Sections 4.5 and 4.6 of the Notes).

4

While Plaintiff is entitled to a money judgment, the Corporate Defendant is clearly incapable of satisfying any such judgment.  Contained in the Corporate Defendant's most recent public filing (10Q, a quarterly report for the period ending September 30, 2014) is a representation that the net loss of the Corporate Defendant for the nine month period ending on that date was $2,238,690.    In addition, the Corporate Defendant reports that it only received $2,200 in revenue during that period.  Further, as of September 30, 2015, the Corporate Defendant reported having only $27,479 in cash assets.   The balance sheet reported by the Corporate Defendant lists total assets of $61,755 and total liabilities of $5,991,245. Thus, the Corporate Defendant is insolvent by any definition.

The declarations contained in the form 10Q make it clear that the Corporate Defendant does not have a present ability to satisfy any monetary judgment obtained by Plaintiff.

The sole remaining viable avenue available to Plaintiff to obtain repayment of the outstanding Notes is by Plaintiff exercising its conversion rights and thereby obtain unrestricted shares of stock in the Corporate Defendant and then by subsequently selling them in the marketplace, in accordance with the agreements between the parties.

At present there is an active market for the Corporate Defendant's stock which continues to trade in significant volume.  So long as that activity continues and assuming that Plaintiff's conversion rights are not frustrated or impeded, Plaintiff will be able to obtain unrestricted shares, sell them in the marketplace and recover the outstanding principal indebtedness owed to it and hopefully additionally recover anticipated profits.

The manifest problem that exists is that the market for the Corporate Defendant's shares is extremely volatile.  There can be no assurance that the current level of activity

5

will continue to be sustained. When, if and as trading subsides, any shares obtained by Plaintiff at that time may not readily be saleable thereby preventing Plaintiff from recovering the indebtedness due it under the outstanding Notes.

Time is of the essence. To protect its interests, Plaintiff must **immediately** be permitted to exercise its conversion rights without the wrongful interference by the Defendants while the market for the Corporate Defendant's shares remains active.

Should injunctive relief not be granted, given the Corporate Defendant's financial condition, and by reason of the volatility in the market for its shares, there is a virtual certainty that Plaintiff will be unable to recover the monies due it and accordingly suffer irreparable injury.

The elements of a claim for temporary restraining or preliminary injunctive relief under FRCP Rule 65 are: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Metropolitan Taxicab Board of Trade v. City of New York, 615 F3d 152 (2d Cir. 2010); Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited, 598 F3d 30 (2d Cir. 2010); Jefferson v. Rose, 869 F.Supp.2d 312 (E. D. N. Y., 2012). The Second Circuit has emphasized that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Reuters Limited v. United Press International, Inc., 903 F2d 904 (2d Cir. 1990); Faiveley Transport Malmo AB v. Wabtec Corporation, 559 F3d 110 (2d Cir. 2009); Donohue v. Paterson, 715 F Sup 2d 306 (EDNY 2010).

6

A.    Substantial Likelihood of Success

Plaintiff is substantially likely to succeed on each of its three claims for relief.  In analyzing such claims, the Court must apply state substantive law and federal procedural law.  In Re Fosamax Products Liability Litigation, 707 F3d 189 (2d Cir. 2013). These claims are as follows:

I.    Breach of Contract

The elements in New York of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.  Dee v. Rakower, 976 N.Y.S. 2d 470 (2d Dept. 2013); Furia v. Furia, 116 AD 2d 694 (2d Dept. 1986).  The Notes and SPAs are valid written contracts between Plaintiff and the Corporate Defendant.

The Convertible Promissory Note and Securities Purchase Agreement contained in the transaction documents identified in the Complaint as "July Note" and "August Note" are materially breached by the Corporate Defendant's termination of Plaintiff's ability to convert debt into common stock reserved for Plaintiff  in the event of the Corporate Defendant's non-payment of the Convertible Promissory Note in cash.  The Corporate Defendant did not pay any cash during the contractual period of time when such prepayment option was available to it under the terms of the Convertible Promissory Note.

Note 3 is materially breached by the Corporate Defendant's material breach of Note 2. The supporting transaction documents contain a cross-default provision that automatically defaulted Note 3 when the Corporate Defendant materially breached Note 2.  Upon Plaintiff's and the Corporate Defendant's consummation of Note 2 and Note 3, Plaintiff soon thereafter fully performed by loaning the Corporate Defendant cash.   The Corporate Defendant's

7

Plaintiff's ability to convert the principal loaned for Note 3 into equity. Plaintiff's ability to be repaid through selling the Corporate Defendant's common stock in the event of the Corporate Defendant's non-payment of Note 1 and Note 2 in cash is materially thwarted, and the inability of Plaintiff to utilize the conversion feature of the Convertible Promissory Notes defeats the circumstances in which Plaintiff willingly made the loans. The Corporate Defendant did not prepay Plaintiff in cash the balance loaned to date. According to the terms of Note 2 and Note 3, Plaintiff is entitled presently to exercise its option to convert debt into equity. As a direct and proximate result of the Corporate Defendant's material breaches, Plaintiff is damaged by the Corporate Defendant's interference and termination of Plaintiff's access to the common stock reserved for its conversion rights. This damage immediately results in Plaintiff's inability to be made whole on Note 2 and Note 3 as the Corporate Defendant has no cash available to pay the Convertible Promissory Notes.

Because the Corporate Defendant's material breaches and Plaintiff's damages are self-evident or easily established, Plaintiff is substantially likely to succeed on the merits of its claims pled in Counts I and II of the Complaint.

II.     Tortious Interference with Contract

A claim under New York law for tortious interference with a business or contractual relationship requires proof of (1) the existence of a business or contractual relationship; (2) that the defendants knew of that relationship; (3) that the defendants intentionally and without justification interfered with the relationship; and (4) that the defendants' interference resulted in damage to the Plaintiff. Meghan Beard, Inc. v. Fadina, 82 AD 3d 591 (1st Dept. 2011); ARB

8

Upstate Communications, LLC v. R.J. Reuter, LLC, 93 AD 3d 929 (3d Dept. 2012); Premium Mortgage Corp. v. Equifax, Inc., 583 F3d 103 (2d Cir. 2009).

The law also provides that where a third party interferes with the agent of another with knowledge that the agent is violating his obligations to his principal, the third party may be held liable as a joint tortfeasor with the agent, unless the third party reasonably believed that the agent's principal acquiesced in the double employment. Restatement of the Law, Agency 2d, Section 313.

Plaintiff is substantially likely to succeed on its claims for relief based upon the Individual Defendant's intentional interference with contract has set forth in the Complaint. The Individual Defendant by his actions as a Chief Executive Officer and President he has made it abundantly clear that he wanted Plaintiff to stop making conversions of stock by refusing to submit the required Issuance Resolution without any justifiable excuse or legal basis. Accordingly, Plaintiff is substantially likely to prevail on it claims against the Individual Defendant.

B.    Irreparable Injury

Plaintiff is irreparably harmed by the Corporate Defendant's removal of Plaintiff's ability to exercise its bargained-for right to convert principal loaned for Note 2 and Note 3. Defendant has interfered, and unless immediately restrained, will continue to thwart Plaintiff's rights to exercise its conversion rights. Without the ability to convert the principal balance of the loans, none of the loans would have been made by Plaintiff.  Without the conversion right, Plaintiff has lost its ability to enforce payment on the loans.  This condition is entirely within the Corporate Defendant and Individual Defendant's control.  Without a restraining order and injunctive order

compelling defendants' compliance with the terms of its contracts with Plaintiff, Plaintiff will continue to suffer irreparable injury.

We recognize that the Courts have often held that monetary injury, standing alone, may not constitute irreparable damages for purposes of determining whether or not to grant a preliminary injunction. However, whereas here there is a significant possibility of an unsatisfied money judgment, irreparable injury may be presented for such purposes. Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 205 (3d Cir. 1990). Stated differently, if a monetary loss would be irrecoverable, even if the movant prevails on the merits, such irretrievable loss may be sufficient to constitute irreparable injury for purposes of entitlement to a preliminary injunction. Nilson v. JP Morgan Chase Bank, NA, 690 F. Supp. 2d 1231 (D. Utah, 2009); Art-Metal-USA, Inc. v. Solomon, 473 F.Supp. 1 (DCDC, 1978); Placid Oil Company v. U. S. Department of Interior, 491 F. Supp. 895 (N.D. Texas 1980).

C.    Balancing of the Equities

The equities of this case must clearly be balanced in favor of the Plaintiff. The Corporate Defendant will not be harmed by being compelled to specifically perform its obligations under the Notes and SPAs. Further, the Corporate Defendant has wantonly breached its obligations under those agreements. On the other hand, the Plaintiff has fulfilled all of its contractual obligations and the Corporate Defendant is in possession of $66,000 which it promised to repay. The Corporate Defendant may contend that its stock price may drop if Plaintiff is permitted to exercise its conversion-of-collateral rights under the Notes and SPAs. However, this expression of self-interest does not equate to a harm being affected on the Corporate Defendant is not itself harmed by being compelled to perform two financing contracts that it willingly entered into and has received the full benefit of Plaintiff's performances.

10

D.     Public Interest

This factor weighs heavily in Plaintiff's favor.  Aside from the usual interests of an organized and efficient society and of the commercial marketplace of honoring and performing contractual agreements, the Corporate Defendant is effectively manipulating its stock price by keeping Plaintiff's potential stock holdings out of the stock market. The Corporate Defendant achieves this result by terminating Plaintiff's ability to be repaid its principal through the conversion right to exchange debt for common stock maintained for Plaintiff by the Corporate Defendant's stock transfer agent.  Simple economics – supply and demand – dictate stock prices. If equitable relief to Plaintiff   is denied, the Corporate Defendant will have manipulated the supply of its stock in the marketplace and artificially elevated its price per share.  Such a result is unconscionable. Stated differently, if equitable relief to Plaintiff is denied, the Court would be endorsing the Corporate Defendant's otherwise illegal manipulation of the price of its common stock, which are violations of Sections 9 and 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

E.     Waiver of Bond Requirement

Rule 65(c) of the Federal Rules of Civil Procedure requires that a party seeking preliminary injunctive relief provide security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." F.R.C.P. Rule 65.  Rule 65's requirement of a bond is not absolute, however; it may be waived in the discretion of the Court. BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC, 425 F.3d 964, 971 (11th Cir. 2005).

Plaintiff and the Corporate Defendant stipulated that a bond would not be required in the enforcement of a breach of the Agreements between the parties. Accordingly, the Court should not direct the posting of a bond as a condition to the injunctive relief sought, especially as the Corporate Defendant would not sustain any losses in the event such relief is granted.

## CONCLUSION

The motion should be granted and an injunction should issue.

Dated: Great Neck, New York
        January 28, 2016

Respectfully Submitted,

NAIDICH WURMAN LLP
Attorneys for Plaintiff

By: _____
Richard S. Naidich (RN4102)

12