UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

VIS VIRES GROUP, INC.

Plaintiff,

-against-

ENDONOVO THERAPEUTICS, INC. AND ALAN COLLIER,

Defendants.

Civil Action No.: CV-16-0470 (ADS) (AYS)

**AMENDED COMPLAINT**

Plaintiff, VIS VIRES GROUP, INC. ("Vis Vires"), files this Amended Complaint and alleges the following:

## I. SUMMARY

1. Vis Vires brings this action for equitable relief and monetary damages caused by breaches of contract and tortuous misconduct by ALAN COLLIER ("Collier") and ENDONOVO THERAPEUTICS, INC. ("the Corporate Defendant"), (collectively, jointly and severally, with Collier, "the Defendants"). Through this action, Vis Vires seeks to recover losses caused by the Defendants' intentional and/or reckless misconduct, including compensatory and restitutionary damages, which losses can only be avoided if the equitable relief and injunctive relief described herein below is granted.

2. That at all relevant times, Collier was and remains the Chief Executive Officer ("CEO") and Interim Chief Financial Officer of the Corporate Defendant.

3. That Vis Vires was an investor in the Corporate Defendant and was well-known to the Defendants. Vis Vires's business strategy at the time of the stock purchases and loans and

issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB and the "Pink Sheets." Nano-cap companies, such as the Corporate Defendant, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms. Vis Vires provides capital to such companies, as an investment in return for shares purchased at a discount to market price.

4. That Vis Vires invested a total of $66,000 in the Corporate Defendant by purchasing securities directly from the Corporate Defendant and making loans thereto, and has sustained damages of $132,000 exclusive of attorney's fees, pre judgment interest, costs and late fees.

## II. JURISDICTION, VENUE AND PARTIES

5. Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York.

6. That Vis Vires is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 111 Great Neck Road, Suite 216, Great Neck, NY, County of Nassau.

7. That the Corporate Defendant is a corporation organized and existing under the laws of State of Delaware, with its principal place of business located at 6320 Canoga Avenue, 15th Floor, Woodland Hills, CA, County of Los Angeles.

8. That Collier is a resident of the State of Pennsylvania and domiciled within that state residing at 6235 Waggoners Gap, Landisburg, PA, as evidenced by an internet report, a copy of which is annexed hereto and incorporated herein as Exhibit "A".

9. That upon information and belief, none of the defendants are residents of or domiciled within the State of New York.

10. That this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (a) since this is a civil action between citizens of different states and the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

11. That this Court has personal jurisdiction over the Corporate Defendant as that defendant has agreed by written contract that any action brought by one party against the other concerning the transactions that are the subject of this case shall be brought only in the State Courts of New York or the Federal Courts located in the State of New York, County of Nassau and the Corporate Defendant also contractually waived any objection to jurisdiction or venue.

12. That this Court also has personal jurisdiction over defendant Collier as said defendant used means and instrumentalities of interstate commerce including but not limited to the mails, interstate telephone and electronic communications and the facilities of the national securities market in order to obtain the funds referenced herein and the execution and delivery of the governing instruments also referenced herein, and Collier also executed the governing instruments that are the subject of this dispute and mail them to New York among other actions, and he expected his actions to have consequences in New York and has received income from interstate commerce.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties committed by the defendants occurred within this judicial district. Additionally, Vis Vires transacts business and maintains its principal place of business in this district. That further, the Corporate Defendant has contractually agreed with Vis Vires to fix jurisdiction and venue for

any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court, and that New York law shall apply to any dispute between the parties.

## III. FACTUAL ALLEGATIONS

14. That heretofore and from time to time, the Defendants have made material misrepresentations of fact to Vis Vires, knowing that such misrepresentations were false, and upon which Vis Vires relied and was damaged.

15. That as a result of these material misrepresentations, Vis Vires invested $66,000 in the Corporate Defendant and sustained damages thereby.

## AS AND FOR A FIRST CAUSE OF ACTION
## PROMISSORY NOTES DEFAULTS

16. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth at length herein.

17. That on or about July 9, 2015, the Corporate Defendant, as borrower, made, executed and delivered to Vis Vires a convertible promissory note ("the July Note") in the amount of $33,000, which Note was issued pursuant to a Securities Purchase Agreement ("the July Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

18. That on or about August 10, 2015, the Corporate Defendant, as borrower, made, executed and delivered to Vis Vires a second convertible promissory note ("the August Note" and together with the July Note, collectively the "Notes") in the amount of $33,000, which Note was issued pursuant to a Securities Purchase Agreement ("the August Agreement" and together

with the July Agreement, collectively the "Agreements") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Corporate Defendant.

19. That the Agreements between the parties provided that venue for any action between the parties would be the State of New York, County of Nassau pursuant to §4.6 of the Notes and §5 of the Agreements.

20. That in the Notes, the Corporate Defendant: (i) granted Vis Vires the right to convert all or any part of the outstanding and unpaid principal amount and accrued interest of the Notes into fully paid and non-assessable shares of common stock of the Corporate Defendant; (ii) agreed that an Event of Default of the Notes shall occur upon the failure of the Corporate Defendant to timely issue shares of common stock of the Corporate Defendant to Vis Vires upon receipt of a conversion notice delivered pursuant to the Note; (iii) agreed that an Event of Default of the Notes shall occur upon the breach or default by the Corporate Defendant of any term or covenant of any other agreement or note by Corporate Defendant in favor of Vis Vires; and (iv) agreed that an Event of Default of the Notes shall occur if Corporate Defendant fails to deliver to Vis Vires the fully executed Irrevocable Transfer Agent Letter from the new transfer agent prior to a change in transfer agents.

21. That on or about January 21, 2016, Vis Vires made, executed and delivered to Corporate Defendant a conversion notice ("Conversion Notice") in accordance with the July Note with respect to the conversion of $15,000.00 of the July Note's principal balance into 95,663 shares of common stock of the Corporate Defendant; (the shares of common stock of Corporate Defendant to be issued pursuant to the Conversion Notice, the "Conversion Shares")

together with a legal opinion with respect to the compliance with Federal Securities Laws (the "Opinion").

22. That the Corporate Defendant has willfully and unlawfully refused to deliver the Conversion Shares and rather has intentionally sought to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the July Note and the July Agreement at the direction of Collier, which actions were beyond the scope of his status and duties as Officer and Director of the Corporate Defendant, and instead were undertaken for his own personal gain; and as a result, the Corporate Defendant defaulted in its obligations under the Notes and Agreements.

23. That by virtue of the foregoing, the Corporate Defendant is in default under the Notes and no such default has been cured.

24. That in addition, Vis Vires has learned that, following the execution of the Notes and Agreements, the Corporate Defendant has replaced its transfer agent with Clear Trust LLC ("Clear Trust"), and has not provided to Vis Vires an Irrevocable Transfer Agent Letter executed by Clear Trust and the Corporate Defendant, thus breaching the agreements between the parties.

25. That the Corporate Defendant has instructed Clear Trust not to issue the Conversion Shares, thus again breaching said agreements.

26. That the replacement of the Corporate Defendant's transfer agent with Clear Trust without obtaining the Irrevocable Transfer Agent Letter was for the sole purpose of hindering, delaying and avoiding the Corporate Defendant's conversion obligations as set forth above.

27. That this course of conduct clearly evinces a systematic and continuous breach of the Corporate Defendant's obligations, and establishes that the Corporate Defendant and Collier acted in bad faith and with fraudulent intent from the very inception of the transactions that are at issue here.

28. That this course of conduct and the Corporate Defendant's wanton and bad faith breach of its obligations to Vis Vires also represent a form of securities fraud under the Federal Securities Laws.

29. That the Corporate Defendant and Collier have not cured the defaults with respect to their failure to issue the Conversion Shares and their failure to provide to Vis Vires the executed Irrevocable Transfer Agent Letter from Clear Trust thereby causing damages to Vis Vires in an amount to be determined by the Court but not less than an amount equal to $132,000 ($66,000 X 200%) together with applicable interest thereon. These additional damages arise from the fact that the Notes expressly provide that in the event of an uncured default, the obligor will be responsible for payment of 200% of the amount of the principal balance then due as liquidated damages and not as a penalty.

30. That moreover, pursuant to Section 1.4(g) of the Notes, the Corporate Defendant acknowledged that the liquidated damages provision contained in Section 1.4(g) is justified as damages resulting from a failure, attempt to frustrate, interference with the conversion rights are difficult if not impossible to qualify, and that the default amount was reasonable under the circumstances.

31. That the Corporate Defendant and Collier's actions have caused damages to Vis Vires in an amount to be determined by the Court but not less than an amount equal to $132,000 together with applicable interest thereon. A Notice of Default dated January 27, 2016 was served upon the Corporate Defendant but the defaults were never cured. Thus, the Corporate Defendant is in default and Vis Vires is entitled to and demands judgment in the sum of $132,000 plus interest and late fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FRAUD IN THE INDUCEMENT**

32. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint with the same force and effect as if fully set forth at length herein.

33. That Vis Vires made an investment in the aggregate amount of Sixty Six Thousand Dollars ($66,000.00) in the Corporate Defendant as a result of the foregoing transactions and as a result of the Defendants' defaults and intentional wrongdoing has not received any repayment of principal or interest on the Notes and has also been deprived of its rights and opportunities to convert the debt into Conversion Shares as aforesaid.

34. That Vis Vires 's willingness to assent to the terms of the investment and the Notes, and the investment itself, was caused by the fraudulent misrepresentations of the Corporate Defendant and Collier contained within the Notes and Agreements and confirmed within resolutions of the Board of Directors of the Corporate Defendant including but not limited to the representations that the Corporate Defendant would not fail to comply with the conversion requirement of the Notes, which misrepresentation was the most crucial and important of all because it was always the bargained for expectation of Vis Vires and the intention of the parties that the repayment of the Notes would occur via the conversion process and, further, the representation that the Corporate Defendant would deliver the Irrevocable Transfer Agent Letter from any replacement transfer agent to Vis Vires which, since the replacement transfer agent, Clear Trust, was under no obligation to issue the Conversion Shares to Vis Vires, allowed the Corporate Defendant and Collier to perpetuate the fraud.

35. That upon information and belief, the Corporate Defendant and Collier, acting in concert and based upon a conspiracy between them, made the foregoing misrepresentations with the knowledge that Vis Vires would rely thereon, and that the Corporate Defendant had no intention to honor its obligations under the Notes and the Agreements and Collier acted purposely and unilaterally, outside of the scope of his status and duties as an Officer and Director and for his own personal gain solely to hinder, delay and avoid the Corporate Defendant's conversion obligations pursuant to the Notes and Agreements.

36. That as a result of the foregoing, Vis Vires has been irreparably harmed.

37. That the Corporate Defendant's and Collier's actions have caused damages to Vis Vires in an amount to be determined by the Court but not less than an amount equal to $66,000 together with applicable interest thereon.

**AS AND FOR A THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT – LOST PROFITS**

38. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth at length herein.

39. That as a direct result of the defaults of the Defendants and their failure to abide by their contractual obligations, Vis Vires has been deprived of, and continues to be deprived of, the opportunity to acquire and to sell the common stock of the Corporate Defendant at a profit, which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

40. That by reason of the foregoing, Vis Vires is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that Vis Vires would have realized had

the stock been made available and delivered to Vis Vires in accordance with its Conversion Notice.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT – LITIGATION EXPENSES**

41. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint with the same force and effect as if fully set forth at length herein.

42. That the Agreement provides that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

43. That by reason of the foregoing, Vis Vires is entitled to a judgment against the Defendants for the reasonable legal fees and litigation expenses paid or incurred in this action.

**AS AND FOR A FIFTH CAUSE OF ACTION – INJUNCTIVE AND EQUITABLE RELIEF**

44. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth at length herein.

45. That the total amount due to Vis Vires is $132,000 exclusive of any additional liquidated damages, consequential damages, default interest, statutory prejudgment interest, legal fees, court costs and litigation expenses.

46. That while Vis Vires is clearly entitled to a money judgment, the Corporate Defendant is clearly incapable of satisfying any such judgment obtained.

47. That in its most recent filing required under the Federal Securities Laws, the Corporate Defendant concedes that it has total assets that are exceeded by its total liabilities (by an amount in excess of $5,900,000) thus rendering it insolvent.

48. That the Corporate Defendant also represents therein that for that period it had a net loss and that at the end of the period, it had insufficient cash to meet its obligations, thus again rendering it insolvent.

49. That the only viable avenue available to Vis Vires to obtain repayment of the outstanding Notes is by exercising its conversion rights and thereby obtaining unrestricted shares of stock in the Corporate Defendant and selling those shares on the open market.

50. That at present there is an active market for the Corporate Defendant's stock which continues to trade in significant volume.

51. That so long as that activity continues and assuming that Vis Vires's conversion rights are not frustrated or impeded, Vis Vires will be able to obtain the unrestricted shares, sell them in the market place, and recover the outstanding principal indebtedness owed to it as well as anticipated profits.

52. That the market for the shares of stock in the Corporate Defendant is extremely volatile, such that there can be no assurance that the current level of activity will continue to be sustained.

53. That if as and when such trading subsides or is curtailed, any shares obtained by Vis Vires at that time no longer be saleable thereby preventing Vis Vires from recovering the indebtedness due it, thereby leading to irreparable harm based on unrecoverable judgments.

54. That time is of the essence, and to prevent Vis Vires from suffering such irreparable harm, Vis Vires must immediately be permitted to exercise its conversion rights, and

the Defendants must be immediately directed to cooperate with the same and to deliver the shares of stock at issue.

55. That because of the nature, condition, and value of the stock which Vis Vires seeks to acquire in this action is unique to it under the facts and circumstances presented, and because Vis Vires will suffer and sustain irreparable damage that cannot be recovered through a money judgment against the Defendants, Vis Vires has no adequate remedy at law and is entitled to equitable relief.

56. That by virtue of the foregoing, Vis Vires is entitled to and demands a judgment directing the Defendants to execute and deliver all documents necessary to complete the conversion process and to deliver the stock sought by Vis Vires and to which it is contractually entitled in the form of a mandatory injunction.

**AS AND FOR AN SIXTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACT**

57. Vis Vires repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint with the same force and effect as if fully set forth at length herein.

58. That the defendant Collier was fully aware at all times of the existence and the valid and binding nature of the contracts and agreements between Vis Vires and the Corporate Defendant.

59. That Collier intentionally and with malice aforethought caused the Corporate Defendant to breach its contractual agreements with Vis Vires without any legal or factual justification based upon the breaches and defaults contained herein above.

60. That Collier caused these breaches and defaults to take place for his own personal benefit and to maintain a higher stock price and stock value for his own holdings, and for his own financial benefit, and not for the benefit of the Corporate Defendant.

61. That as a result, Collier is liable to Vis Vires under the theory of intentional interference with contract, as the contracts at issue were in fact breached, thereby causing damages to Vis Vires of at least $132,000.

WHEREFORE, Vis Vires demands judgment against Defendants as follows:

(i) For $132,000 on the First Cause of Action;

(ii) For $66,000 on the Second Cause of Action;

(iii) For an amount of lost profits to be determined by the Court but in no event less than $132,000 on the Third Cause of Action;

(iv) Awarding Vis Vires its reasonable legal fees and costs of litigation on the Fourth Cause of Action;

(v) For a temporary restraining order and a preliminary and permanent injunction against the Defendants directing that said Defendants and their agents, servants and employees immediately take all steps necessary and proper to permit the conversion of debt to stock and to deliver the stock at issue as described above on the Fifth Cause of Action;

(vi) For an award of damages to be determined by the Court but no less than $132,000 on the Sixth Cause of Action; and

(vii) Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Note; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.

Dated: Great Neck, New York
March 8, 2016

NAIDICH WURMAN LLP

By: ______________________________
Richard S. Naidich, Esq. (RSN 4102)
111 Great Neck Road, Suite 214
Great Neck, NY 11021
Telephone:516-498-2900
Facsimile: 516-466-3555
Attorneys for Plaintiff –
Vis Vires Group, Inc.



INTELIUS PREMIER

My List | Search | My Account

Welcome, JAMES! Go to Intelius.com | Sign Out

SEARCH BY: NAME | PHONE | EMAIL

**Find Anyone** First Name (optional) | Last Name | City, State (optional) | **Search Now**

## Profile for Alan B Collier

« My List

### Alan B Collier

Age: 55 (Born Jun 23, 1960)

None

Add Notes

### Contact Information

Phone
(818) 906-9800
(717) 582-4480
(717) 789-4598
(717) 582-0005

Email
abcollier@adelphia.net
acollier@mosaiccapital.com

### Relatives

Malinda Collier (Age: 58)
Isabelle Collier (Age: 94)
Robert Collier

### Employment

chief executive officer
IP Resources International, Inc
Dec 2011

CEO
Endonovo Therapeutics, Inc
Dec 2011

CEO
Hanover Portfolio Acquisitions Inc
Dec 2011

Senior Managing Director
Mid-Market Securities LLC
Dec 2010 - Dec 2013

Managing Director
Mosaic Capital , LLC
Dec 2009 - Dec 2010

Vice President
Corporate Capital Group, LLC
Dec 2008 - Dec 2009

Managing Member
C2 Capital
Dec 2007

Managing Director
Greenbridge Capital
Dec 2005 - Dec 2007

### Interactive Relationship Map

Visually explore anyone's network. Click any node to begin!

Hide Addresses | Hide Professional | Hide Education | Hide Relatives

**Name:**
Alan Collier
**Age:**
55 years old
**Phones:**
- (717) 582-4480

**Emails:**
- abcollier@adelphia.net
- acollier@mosaiccapital.com

**Has Lived At:**
- 515 Windy Hill RD Shermans Dale, PA
- 15165 Ventura BLVD Sherman Oaks, CA
- 6235 Waggoners Gap RD Landisburg, PA

**View Profile**

Tell us what you think!

### Addresses Show All Addresses

1 **15165 Ventura BLVD #STE 425**
**Sherman Oaks, CA 91403**

## Verify Current Phone & Address

Find out which address(es) and landline phone number(s) in this profile are current according to available utility records. Excludes mobile phone numbers.

Add to Profile

## Run a Criminal Check

Find out more about this person's background. Search criminal records in 43 states that may include when available:

- Felonies, misdemeanors, sex offenses, traffic violations, and other criminal offenses
- Case type, court name, court type, disposition, filing date, and more

Add to Profile

Criminal Check Disclaimer

(818) 906-9800

2 6235 Waggoners Gap RD
Landisburg, PA 17040
(717) 582-4480

3 515 Windy Hill RD
Shermans Dale, PA 17090
(717) 582-4480

4 RR 1 Dolphin WAY
Landisburg, PA 17040
(717) 789-4598

5 2 Rr #2 BOX 214 2
Shermans Dale, PA 17090
(717) 789-4598

6 74 Landisburg RD
Landisburg, PA 17040

**Owner Information**

| | |
|---|---|
| Owner | Douglas Emmett Llc |
| Tax Amount | $190,713 |
| Tax Year | 2014 |

**Property Details**

| | |
|---|---|
| Acres | 0.453 |
| Bedrooms | - |
| Bathrooms | - |
| Year Built | 1987 |
| Land Sq. Ft. | 19,732 |
| Living Sq. Ft. | - |

**Neighbors**
Yevgeny Ravin






© 2003-2016 Intelius, Inc. All Rights Reserved.




My List Search My Account

Welcome, JA

SEARCH BY: NAME PHONE EMAIL

**Find Anyone** First Name (optional) Last Name City, State (optional)

## Profile for Alan B Collier

### Alan B Collier

Age: 55 (Born Jun 23, 1960)

Add Notes...

### Contact Information

**Phone**
(818) 906-9800
(717) 582-4480
(717) 789-4598
(717) 582-0005

**Email**
abcollier@adelphia.net
acollier@mosaiccapital.com

### Relatives

Malinda Collier (Age: 58)
Isabelle Collier (Age: 94)
Robert Collier

### Employment

chief executive officer
IP Resources International, Inc.
Dec 2011

CEO
Endonovo Therapeutics, Inc.
Dec 2011

CEO
Hanover Portfolio Acquisitions Inc
Dec 2011

Senior Managing Director
Mid-Market Securities LLC

### Interactive Relationship Map

Visually explore anyone's network. Click any node to begin!




Tell us what you think!

**Addresses** Show All Addresses

Dec 2010 - Dec 2013

Managing Director
Mosaic Capital , LLC
Dec 2009 - Dec 2010

Vice President
Corporate Capital Group, LLC
Dec 2008 - Dec 2009

Managing Member
C2 Capital
Dec 2007

Managing Director
Greenbridge Capital
Dec 2005 - Dec 2007

## Verify Current Phone & Address

Find out which address(es) and landline phone number(s) in this profile are current according to available utility records. Excludes mobile phone numbers.




## Run a Criminal Check

Find out more about this person's background. Search criminal records in 43 states that may include when available:

- Felonies, misdemeanors, sex offenses, traffic violations, and other criminal offenses
- Case type, court name, court type, disposition, filing date, and more




Criminal Check Disclaimer

1. **15165 Ventura BLVD #STE 425**
   **Sherman Oaks, CA 91403**
   **(818) 906-9800**
2. 6235 Waggoners Gap RD
   Landisburg, PA 17040
   (717) 582-4480
3. 515 Windy Hill RD
   Shermans Dale, PA 17090
   (717) 582-4480
4. RR 1 Dolphin WAY
   Landisburg, PA 17040
   (717) 789-4598
5. 2 Rr #2 BOX 214 2
   Shermans Dale, PA 17090
   (717) 789-4598
6. 74 Landisburg RD
   Landisburg, PA 17040




Owne
Owner

Tax An
Tax Ye

Prope
Acres
Bedro
Bathro
Year B
Land S
Living

Neighl
Yevge



© 2003–2016 Intelius, Inc. All Rights Reserved.