UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VIS VIRES GROUP, INC.,　　　　　　　　　　　　　　　Case No.: cv-16-0470
　　　　　　　　　　　　　　　　　　　　　　　　　　　　(ADS ) (AYS)

　　　　　　　　　　　　　　Plaintiff,

　　　　-against-

ENDONOVO THERAPEUTICS, INC.
AND ALAN COLLIER,

　　　　　　　　　　　　　　Defendants.
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW

　　　　　　　　　　　　　　　　　　　　　　　　Naidich Wurman LLP
　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　　111 Great Neck Road – Suite 214
　　　　　　　　　　　　　　　　　　　　　　　　Great Neck, New York  11021

# TABLE OF CONTENTS

| | |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 1 |
| Description of the Parties and Nature of the Action | 1 |
| Subject Transactions | 2 |
| Commencement of the Action | 4 |
| ARGUMENT | |
| POINT I:  DEFENDANTS' REQUEST FOR SANCTIONS IS ITSELF FRIVOLOUS | 5 |
| POINT II:  THE STANDARDS FOR DISMISSAL ARE NOT MET HERE | 6 |
| CONCLUSION | 10 |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

VIS VIRES GROUP, INC.,

                     Plaintiff,

   -against-

ENDONOVO THERAPEUTICS, INC.,
and ALAN COLLIER,

                     Defendants.

------------------------------------------------------------------x

Civil Action No.: cv-16-0470
(ADS) (AYS)

## PLAINTIFF'S MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

The plaintiff, Vis Vires Group, Inc. ("Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion by the defendants Endonovo Therapeutics, Inc., ("the Corporate Defendant") and Alan Collier, ("the Individual Defendant"), which seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b) and an award of sanctions.

### STATEMENT OF FACTS

A.   Description of the Parties and the Nature of the Action

As set forth in the Amended Complaint, Plaintiff is engaged in the business of making loans to small-cap public companies such as the Corporate Defendant. The form of these loans typically involve a Convertible Promissory Note executed by the borrower together with a Securities Purchase Agreement (hereinafter "SPA") and other companion loan documents. Pursuant to this business model, Plaintiff is enabled to provide small-cap public entities with much needed capital unavailable to them from more conventional sources. While the pertinent

loan documents permit the borrower to prepay Plaintiff within the first 180 days from the funding of such loans, borrowers rarely avail themselves of that right. Rather, Plaintiff typically obtains repayment by its exercising its rights to convert the borrower's debt into equity receiving unrestricted common stock of the borrower.

In order to comply with Rule 144 of the Securities Act of 1933 as amended, Plaintiff must wait six months from the funding of a loan to be in a position to obtain unrestricted shares which places Plaintiff at substantial risk since during the tacking period debtor may (i) be delinquent in its filings to the SEC, the timely filing of which is a predicate to Plaintiff's conversion rights; or (ii) the company's shares may be illiquid and trading volume insufficient to accommodate Plaintiff's conversion; or (iii) trading of the company's stock may be halted by the SEC or appropriate exchange. Should any one or more of the aforementioned situations occur it would render the Notes uncollectable and valueless.

B.     The Subject Transactions

Commencing in June 2015, Plaintiff established a business relationship with the Corporate Defendant, which involved the making of three separate convertible loans. Each of these loans was reflected in the Corporate Defendant's public filings with the Securities and Exchange Commission ("the SEC"). Each of these loans are virtually identical in documentation consisting of: (i) a Convertible Promissory Note; (ii) a Securities Purchase Agreement; (iii) Issuance Resolution; (iv) a Resolution by the Board of Directors authorizing the transaction; (v) an Officer's Certificate; and (vi) a Disbursement Authorization. All documents are executed and delivered to the Plaintiff prior to the funding of each individual loan. Such loans are unsecured and present a high degree of risk to the lender.

The following represents a list of the loans made by Plaintiff to the Corporate Defendant:

- Note dated June 9, 2015 ("Note 1") in the principal amount of $38,000;

- Note dated July 9, 2015 ("Note 2") in the principal amount of $33,000; and

- Note dated August 10, 2014 ("Note 3" and together with Note 2, collectively, the "Notes") in the principal amount of $33,000.

Note 1 has been prepaid by the Corporate Defendant and is not at issue in this case. None of the other Notes have been paid at all.

Stated differently, Note 2 and Note 3 remain outstanding and in default. As of this date, the Corporate Defendant has not prepaid any of those Notes nor has Plaintiff converted any portion of those debts to equity. This is because the Plaintiff's efforts to do so have been deliberately thwarted by the defendants, who are sophisticated parties that are attempting to rewrite the transactions at issue after receiving the benefits of same.

On or about January 21, 2016, the Plaintiff submitted a Notice of Conversion to the Corporate Defendant's transfer agent, Clear Trust LLC (hereinafter referred to as "Clear Trust").

Clear Trust required a separate and distinct Issuance Resolution from the Corporate Defendant with respect to the amount of stock requested in each Notice of Conversion. The Corporate Defendant is under a contractual duty and obligation to Plaintiff to provide such an Issuance Resolution, and the failure to do so is a material default under the loan documents. Nevertheless, the Corporate Defendant failed and refused to provide the required Issuance Resolution, and the Individual defendant, who is the Chief Executive Officer and in control of the Corporate Defendant, clearly directed the Corporate Defendant not to provide the required Issuance Resolution (in violation of the provisions of the Note and the SPA) in order to manipulate the stock price of the Corporate Defendant.

Thus, Plaintiff has been prevented from exercising its conversion rights under the outstanding Notes and SPAs, as a direct result of the flagrant breaches of contract by the Corporate Defendant.

On January 28, 2016, Plaintiff's attorneys forwarded a letter addressed to the Corporate Defendant and Collier advising them of their default in the obligations under the Notes, and stating that these were intentional acts intended to interfere, hinder and/or delay Plaintiff's rights under the Notes.

In wrongfully resisting Plaintiff's conversion rights, defendants plainly seek to manipulate the price of the Corporate Defendant's shares in the market in flagrant breach of the agreement between these sophisticated commercial parties. Most significantly if the conversion process is not completed, the entire investment made by the Plaintiff will be lost, as the Corporate Defendant is insolvent from both an asset and income standpoint.

C. <u>Commencement of the Action</u>

Based upon the foregoing, the Plaintiff commenced this action on January 29, 2016 by filing a Complaint alleging subject matter jurisdiction based upon a question arising under the federal laws, to wit, the Securities Exchange Act of 1934. The Plaintiff also moved for a mandatory preliminary injunction.

The Defendants opposed the motion.

By Memorandum of Decision & Order dated March 1, 2016, the United States District Court for the Eastern District of New York (Spatt, J.) denied the motion in its entirety. The Court found that there was no question arising under federal law and that therefore subject matter jurisdiction is lacking. The Court also found that the standards for the drastic remedy of a preliminary mandatory injunction had not been met. However, the Court did not reach the

parties' contentions with respect to the merits of the Plaintiff's claims. Decision, p. 7. In addition, the Court expressly granted leave to the Plaintiff to file an Amended Complaint within thirty days from which the Court could ascertain whether it had subject matter jurisdiction based upon diversity. Decision, p. 18.

In conformity with the Decision, the Plaintiff served an Amended Complaint on a timely basis withdrawing the cause of action or claim based upon the federal securities laws and setting forth in detail the basis for diversity jurisdiction. The Defendants now move to dismiss the Amended Complaint claiming that it was improperly filed and that it fails to state a cause of action under the Civil Practice Laws and Rules of the State of New York. The Defendants do not rely on the pleading requirements of the Federal Rules of Civil Procedure, and do not contend that the subject matter jurisdiction is lacking. For the reasons set forth below, it is most respectfully submitted that the motion should be denied as a matter of law or alternatively as a matter of discretion.

## ARGUMENT

### POINT ONE

### DEFENDANTS' REQUEST FOR SANCTIONS IS ITSELF FRIVOLOUS

The Defendants contend that sanctions should be imposed because the Plaintiff has filed an Amended Complaint.

Not so! On page 18 of the Decision, this very Court stated as follows:

> In sum, the Court finds that the Plaintiff failed to establish that the Court has subject matter jurisdiction over this action, or a reasonable probability that such jurisdiction exists. As such, the Court denies the Plaintiff's motion for a preliminary injunction and *sua sponte* dismisses the Complaint without prejudice. However, <u>the Court grants the Plaintiff leave to file an amended complaint within thirty days of the date of this Order from which the Court may ascertain whether it has subject matter jurisdiction over this action</u>. (Emphasis supplied).

5

Moreover, counsel did not provide the twenty one days notice required by FRCP Rule 11(c)(2) that is required as a predicate to any sanction request. Thus, it is Defendants' request for sanctions that is itself frivolous and utterly without foundation.

POINT TWO

THE STANDARDS FOR DISMISSAL ARE NOT MET HERE

It is well settled that in order to survive a motion to dismiss, a complaint must merely contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. McCusker v. Hibuplc, 2016 WL 538472(E.D.N.Y. 2016). Facial plausibility is achieved when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* As a general rule, the court is required to accept as true all of the allegations contained in the complaint, and to consider those facts in the light most favorable to the plaintiff. Galper v. JP Morgan Chase Bank, N.A., 802 F. 3d 437 (2d Cir. 2015). Determining whether a plausible claim has been pled is a context-specific task that requires the review in court to draw on its judicial experience and common sense. Cooper v. Calvary Staffing, LLC, 2015 WL 5658739 (E.D.N.Y. 2015).

Judged by these legal standards, we submit that the motion should be denied as a matter of law. The cause of action for breach of contract is well pled and relies upon the indisputable fact that by failing to permit the Plaintiff to convert part or all of the note into stock as per the agreements between the parties, the Corporate Defendant clearly breached those agreements. Under the circumstances presented a motion to dismiss is inappropriate and should be denied. Dickerson v. Kaplan, 763 F. Supp. 694 (E.D.N.Y. 1990).

The fraud cause of action is also sufficiently pled when we consider the fact that the Court must consider the allegations of the Amended Complaint to be true. IOP Cast Iron Holdings LLC. v. J.H.Whitney Capital Partners, LLC, 91 F. Supp.3d 456 (S.D.N.Y. 2015); Hirsch v. Columbia University, 293 F. Supp. 2d 372 (S.D.N.Y. 2003).

The third and fourth cause of action for lost profits based upon the Corporate Defendant's breach of contract and award of legal fees are also sufficiently pled for the same reasons.

The cause of action for a permanent injunction and specific performance between the parties is also legally and factually sufficient. Berger v. McHugh, 26 F. Supp. 107 (M.D. Pa. 1939). Simply stated, the essence of the agreements between the parties was that after the six month holding period required by Rule 144 had expired, the Plaintiff would be contractually and absolutely entitled to convert the debt into stock which was the entire purpose of the transaction in the first place. Thus, specific performance is appropriate.

The doctrine of res judicata does not apply here as the Plaintiff is no longer seeking a preliminary injunction but will instead at the proper juncture, seek a judgment on its claims for specific performance and a permanent mandatory injunction. Indeed, this very Court stated in its Decision that it has not even considered the validity of the Plaintiff's claims but merely the question of subject matter jurisdiction (which the Defendants do not apparently contest) and whether or not a preliminary injunction - - which the Plaintiff no longer seeks – should be granted. Stated differently, the denial of a preliminary injunction motion does not lead to a finding of res judicata or issue preclusion. Such a denial merely leads to the conclusion that the moving party has not met its burden for interim relief. But that by no means leads to the further conclusion that the relief sought cannot be granted after trial or upon summary judgment.

Stated otherwise, the denial of a motion for a preliminary injunction is not res judicata as to whether or not a permanent injunction may be granted or as to other issues. Goodheart Clothing Company, Inc. v. Laura Goodman Enterprises Inc., 962 F. 2d 268 (2d Cirt. 1992); Securities & Exchange Commission v. North American Research & Development Corp., 59 F.R.D.111 (S.D.N.Y. 1972); Kaplan v. Queens Optometric Associates, P.C., 239 A.D.2d 449 (2d Dep't, 2002) ("it is well settled that the granting or denial of a motion for a preliminary injunction does not constitute the law of the case or an adjudication on the merits of the claim for a permanent injunction and therefore, the issues must be tried as if no application for a preliminary injunction had been made".)

In this light, Defendants' reliance on the doctrine of res judicata and the denial of Plaintiff's motion for interim relief must fall of its own weight. Town of Concord v. Duwe, 4 N.Y.3d 870 (2005) ("mere denial of the motion for prelimiarny injunction did not constitute the law of the case or an adjudication on the merits"); Bolling v. Delta Funding Corp., 180 A.D.2d 1003 (3d Dep't, 1992).

The cause of action for intentional interference of contract should also survive dismissal as we properly plead the existence of the contracts between the Plaintiff and the Corporate Defendant, of the Individual Defendants knowledge of the contracts, his intentional procurement of their breach, and damages resulting from such breach. Intelsat U.S.A. Sales Corp. v. Juch-Tech, Inc., 935 F. Supp. 2d 101 (D.D.C. 2013).

The cases cited by and relied upon by Defendants lend no support to their cause. In Comforce Telecom, Inc. v. Spears Holding Company, Inc., 42 A.D.3d 557 (2d Dep't, 2007), cited by Defendants, the Court merely held that a promissory note was not an instrument for the

8

payment of money only and thus, was insufficient for purposes of CPLR §3213. No such issues are presented here, thereby distinguishing the Comforce case.

In Lugli v. Johnston, 78 A.D.3d 1133 (2d Dep't, 2010), cited by Defendants, the court denied again a CPLR §3213 motion. Since that statute does not apply here, the two cases are distinguishable.

In Glatt v. Mariner Partners, Inc., 63 A.D3d 428 (1st Dep't, 2009), cited by and relied upon by Defendants a cause of action for fraud was dismissed because there was no allegation of a knowing misrepresentation of a present material fact with the intent to deceive, unlike the case at bar. Thus, the Glatt is inapposite.

In Courageous Syndicate Inc. v. People-To-People Sports Committee, Inc., 141 A.D.2d 599 (2d Dep't, 1988), cited by Defendants, the action was dismissed against a corporate officer upon the grounds that there is no allegation that the officer had acted for personal profit - - unlike the case at bar. As a result, the Courageous case is distinguishable.

In New York University v. Continental Insurance Company, 87 N.Y.2d 308 (1995), cited by Defendants, there were insufficient allegations of fraud unlike the instant case. Thus, the Continental case is also distinguishable. Stated otherwise, Defendants have not met their burden of presenting any legal authority that would warrant dismissal of this federal case.

Under the circumstances presented the motion should be denied in its entirety for the legal reasons set forth hereinabove.

## CONCLUSION

The motion should be denied.

Dated: Great Neck, New York
April 5, 2016

Respectfully Submitted,

NAIDICH WURMAN LLP
Attorneys for Plaintiff

By: _____
Richard S. Naidich (RN4102)

10