UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
VIS VIRES GROUP, INC.,

                           Plaintiff,

    -against-

ENDONOVO THERAPEUTICS, INC. and ALAN COLLIER,

                           Defendant.
--------------------------------------------------------------------------------x

**Memorandum of Decision & Order**
16-cv-470 (ADS)(AYS)

## APPEARANCES:

**Naidich Wurman LLP**
*Attorneys for the Plaintiff*
111 Great Neck Road, Suite 214
Great Neck, NY 11021
       By:    Richard S. Naidich, Esq.
                Bernard S. Feldman, Esq.
                Robert P. Johnson, Esq., Of Counsel

**Ellsworth & Young LLP**
*Attorneys for the Defendants*
1164 Manhattan Avenue, Suite 100
Brooklyn, NY 11222
       By:    Robert J. Young, Esq., Of Counsel

**SPATT, District Judge:**

       Presently before the Court in this diversity breach of contract and tortious interference action is a motion by the Defendants Endonovo Therapeutics, Inc. ("Endonovo") and Alan Collier ("Collier," together with Endonovo, the "Defendants"), seeking an order pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6) dismissing the amended complaint filed by the Plaintiff Vis Vires Group, Inc. (the "Plaintiff") on the ground that it fails to state a claim upon which relief may be granted.

       For the reasons that follow, the motion to dismiss is granted in part and denied in part.

# I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the amended complaint and construed in favor of the Plaintiff.

## A. The July 2015 Agreement

On July 9, 2015, Endonovo, a Delaware corporation with a principal place of business in California, entered into a contract, styled a Securities Purchase Agreement (the "July Loan Agreement") with the Plaintiff, a domestic corporation with a principal place of business in Great Neck.

Although the July Loan Agreement is not annexed to the amended complaint; and although, in general, extrinsic evidence may not be consulted in connection with a motion to dismiss under Rule 12(b)(6), in resolving this motion, the Court, in its discretion, will consider the July Agreement, which was previously submitted in connection with an earlier motion. *See* Jan. 28, 2016 Affidavit of Seth Kramer in Support of Motion for Provisional Remedies ("Kramer Aff."), DE [5-1], at Ex. "B".

In the Court's view, this document and the other documents forming the basis of the Plaintiff's claims, are plainly integral to, and incorporated by reference in the amended complaint. *See Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (observing that a common example of the material properly considered on a 12(b)(6) motion is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls").

Pursuant to the July Loan Agreement, the Plaintiff made a loan to Endonovo in the amount of $33,000. To ensure repayment of the loan, Endonovo executed a convertible promissory note (the "July Note"), with a maturity date of April 13, 2016, in an equal amount in favor of the Plaintiff. Again, although the July Note is not attached to the amended complaint, it is also contained in the Court record from a prior motion, and, for substantially the same reason as outlined above, will be considered here. *See* Kramer Aff., Ex. "A."

The Plaintiff alleges that the July Note "provided for certain issuance of, and conversion rights in and to common stock of [Endonovo]." Am. Compl. ¶ 17. In particular, by the terms of the July Note, the Plaintiff alleges that it was entitled to elect to convert the outstanding balance due on the loan into shares of Endonovo common stock (the "Debt-to-Equity Option").

In relevant part, the July Note provides, in part, the following:

> [§] 1.1 Conversion Right. The [Plaintiff] shall have the right from time to time, and at any time during the period beginning on the date which is one hundred eighty (180) days following the date of this Note [January 5, 2016] and ending on the later of: (1) the Maturity Date [April 13, 2016] and (ii) the date of payment of the Default Amount (as defined in Article III) pursuant to Section 1.6(a) or Article III, each in respect of the remaining outstanding principal amount of this Note to convert all of any part of the outstanding and unpaid principal amount of this Note into full paid and non-assessable shares of Common Stock, as such Common Stock exists on the Issue Date, or any shares of capital stock or other securities of [Endonovo] . . .
>
> \*   \*   \*
>
> [§] 1.4 Method of Conversion.
> (a) Mechanics of Conversion. Subject to Section 1.1, this Note may be converted by the [Plaintiff] in whole or in part at any time from time to time after the Issue Date, by (A) submitting to [Endonovo] a Notice of Conversion . . .
> (d) Delivery of Common Stock Upon Conversion. Upon receipt by [Endonovo] from the [Plaintiff] of . . . a Notice of Conversion meeting the requirements for conversion . . . [Endonovo] shall issue and deliver or cause to be issued and delivered to or upon the order of the [Plaintiff] certificates of the Common Stock issuable upon such conversion within three (3) business days after such receipt . . .
> (e) Obligation of Borrower to Deliver Common Stock. . . . If the [Plaintiff] shall have given a Notice of Conversion as provided herein, [Endonovo]'s obligation to issue and deliver the certificates for Common Stock shall be absolute and unconditional, irrespective of the absence of any action by the [Plaintiff] to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against any person or any action to enforce the same, any failure or delay in the enforcement of any other obligation of [Endonovo] to the holder of record, or any setoff, counterclaim, recoupment, limitation or termination, or any breach of alleged breach by the [Plaintiff] of any obligation to [Endonovo] in connection with such conversion.

Kramer Aff., Ex. "A," at pp. 5-6, 20.

Further, the terms of the July Note set forth various events constituting a default, including the following "Events of Default" referenced in the amended complaint:

ARTICLE III. EVENTS OF DEFAULT.

\* \* \*

[§] 3.1 <u>Failure to Pay Principal or Interest</u>. [Endonovo] fails to pay the principal hereof or interest thereon when due on this Note, whether at maturity, upon acceleration or otherwise.

[§] 3.2 <u>Conversion and the Shares</u>. [Endonovo] fails to issue shares of Common Stock to the [Plaintiff] (or announces or threatens in writing that it will not honor its obligation to do so) upon exercise by the [Plaintiff] of the conversion rights of the [Plaintiff] in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer . . . any certificate for shares of Common Stock issued to the [Plaintiff] upon conversion of or otherwise pursuant to this Note as and when required by this Note, [Endonovo] directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent in transferring . . . any certificate for shares of Common Stock to be issued to the [Plaintiff] upon conversion of or otherwise pursuant to this Note as and when required by this Note . . . and any such failure shall continue uncured . . . for three (3) business days after the [Plaintiff] shall have delivered the Notice of Conversion . . .

\* \* \*

[§] 3.15 <u>Replacement of Transfer Agent.</u> In the event that [Endonovo] proposed to replace its transfer agent, [Endonovo] fails to provide, prior to the effect date of such replacement, a fully executed Irrevocable Transfer Agent [Letter] in a form as initially delivered pursuant to the [July Loan] Agreement . . . signed by the successor transfer agent to [Endonovo] . . .

*Id.* at pp. 14-16.

Article III goes on to state, in pertinent part, that the occurrence of any Event of Default set forth in §§ 3.1, 3.2 and/or 3.15 would result in, among other penalties, the Promissory Notes becoming immediately due and payable. *See id.* at p. 17.

B. **The August 2015 Agreement**

On August 10, 2015, Endonovo entered into a second contract with the Plaintiff, again styled a Securities Purchase Agreement (the "August Loan Agreement," together with the July Loan Agreement, the "Loan Agreements").

Pursuant to the August Loan Agreement, the Plaintiff made a second $33,000 loan to Endonovo, in exchange for which Endonovo executed a second convertible promissory note (the

"August Note," together with the July Note, the "Promissory Notes") in an equal amount in favor of the Plaintiff.

Other than the maturity date of the August Note, which was not provided to the Court, it allegedly contained the same relevant language as the July Note regarding: (1) the Debt-to-Equity Option; and (2) the Plaintiff's entitlement to an Irrevocable Transfer Agent Letter.

C.  The Allegations of Default

On January 21, 2016, the Plaintiff sought to partially exercise its Debt-to-Equity Option under the July Note by converting $15,000 of the remaining balance due under the July Loan Agreement to 95,663 shares of Endonovo common stock. In this regard, the Plaintiff allegedly executed and delivered to Endonovo a Notice of Conversion, in accordance with the terms of the July Note.

However, allegedly at the direction of its chief executive officer, namely, the individual Defendant Collier, Endonovo refused to effectuate the conversion. According to the Plaintiff, this failure constitutes an Event of Default under Article III of the July Note.

In this regard, the Plaintiff alleges that, in directing Endonovo to breach its obligations under the July Note, Collier was acting outside the scope of his role as a corporate officer and for his own personal benefit. Therefore, according to the Plaintiff, Collier's conduct constitutes tortious interference with the July Loan Agreement.

The Plaintiff further alleges that, on an unspecified date after the execution of the Promissory Notes, without providing the required notice to the Plaintiff, Endonovo replaced its stock transfer agent with a corporation called Clear Trust LLC, and then instructed Clear Trust LLC not to honor the Plaintiff's otherwise valid Notice of Conversion. According to the Plaintiff, each of these actions constituted an independent Event of Default under Article III of the Promissory Notes.

The Plaintiff further alleges that, to date, no part of the August Promissory Note, which secured repayment of the amount loaned pursuant to the August Loan Agreement, has been repaid – itself an independent breach of the contract and a default under the related payment instrument.

The complaint appears to allege that these defaults were premeditated and that Endonovo, at the direction of Collier, never intended to comply with its obligations under the Loan Agreements and/or the Promissory Notes. *See, e.g.*, Compl. ¶ 27 (alleging that Endonovo's failure to comply with the terms of the contracts evidences "fraudulent intent from the very inception of the transactions at issue"); *id.* ¶¶ 34-35 (alleging that, by assenting to the terms of the contracts, when, in actuality, they had "no intention to honor [their] obligations," the Defendants fraudulently induced the Plaintiff to enter the transactions).

Based on these allegations, the Plaintiff alleges causes of action sounding in: (1) promissory note default; (2) fraudulent inducement; (3) breach of contract; and (4) tortious interference with a contract. By this action, the Plaintiff seeks monetary damages and penalties under the contracts, together with interest, liquidated damages, attorneys' fees, and costs. The Plaintiff also seeks equitable relief in the form of a mandatory injunction compelling the Defendants to comply with their obligations under the Loan Agreements and the Promissory Notes.

## II. RELEVANT PROCEDURAL HISTORY

On January 29, 2016, the Plaintiff commenced this action by filing a summons and complaint, together with an order to show cause, seeking certain provisional remedies. In particular, similar to the ultimate relief outlined in the complaint, the Plaintiff's proposed order to show cause sought to immediately compel the Defendants to comply with their obligations under the Loan Agreements and the Promissory Notes.

Following oral argument and briefing by the parties, on March 1, 2016, the Court issued a Memorandum of Decision & Order (the "March Opinion"), denying the Plaintiff's motion in its

entirety and *sua sponte* dismissing the original complaint without prejudice to refiling. *See Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376 (E.D.N.Y. 2016) (Spatt, J.).

In relevant part, in the March Opinion, the Court determined that it lacked subject matter jurisdiction over the Plaintiff's claims. In particular, the Plaintiff alleged that original jurisdiction existed under 28 U.S.C. § 1331, namely, "federal question jurisdiction," insofar as at least one of the claims in the original complaint arose under Section 10(b) of the federal Securities Exchange Act of 1934.

However, the Court held that this claim – which was premised on a tenuous theory of market manipulation arising solely from the Defendant's broken promise to fulfill their obligations under the Loan Agreements and the Promissory Notes – did not plausibly allege a violation of federal law. Thus, since the Plaintiff's remaining causes of action alleged only theories of New York common law, all of which involved claims and remedies revolving around the interpretation of a contract, the Court found that it lacked "federal question jurisdiction" under 28 U.S.C. § 1331.

Alternatively, the Plaintiff argued that original jurisdiction existed under 28 U.S.C. § 1332, namely, "diversity jurisdiction," in that the parties reside in different States and the amount in controversy exceeds $75,000. The Court disagreed, noting that, although the original complaint had alleged the State in which the individual Defendant Collier "resided," the parties' complete diversity of citizenship could not be determined without an allegation or other demonstration of Collier's "domicile" – a separate legal concept.

Therefore, the Court determined that it lacked subject matter jurisdiction over the Plaintiff's claims, and, on its own motion, dismissed the complaint. Nevertheless, even assuming that jurisdiction did exist, the Court went on to explain why the preliminary injunctive relief sought by the Plaintiff would still be unwarranted.

In that regard, the Court noted that the Plaintiff had failed to demonstrate that it would suffer irreparable harm in the absence of an injunction because adequate remedies at law, in the form

of money damages and penalties under the contracts, existed to compensate the Plaintiff for its alleged losses. The Court's reasoning was not altered by the Plaintiff's argument that the corporate Defendant was on the brink of insolvency, raising the likelihood that an eventual money judgment would go unsatisfied. Nor was the Court persuaded by language contained in the underlying agreements purporting to concede that, in the event of a breach, money damages would be inadequate.

Ultimately, despite denying the motion for provisional remedies and dismissing the original complaint, the Court expressly granted the Plaintiff leave to file an amended complaint curing the jurisdictional deficiencies on or before March 31, 2016.

On March 9, 2016, the Plaintiff filed an amended complaint.

On March 30, 2016, the Defendants filed the present motion seeking to again dismiss the action under Fed. R. Civ. P. 12(b)(6).

### III. DISCUSSION

#### A. The Standard of Review

Under FED. R. CIV. P. 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard announced in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Rather, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 557). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 557.

Furthermore, claims based on fraud are subject to the heightened pleading standard found in FED. R. CIV. P. 9(b). In particular, a party asserting fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' how the misrepresentations were fraudulent; and the details that 'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.' " *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (Spatt, J.) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)).

B.  **As to the Defendants' Renewed Objections to the Court's Subject Matter Jurisdiction**

Before turning to the merits of the Defendants' Rule 12(b)(6) motion, the Court notes that the Defendants also appear to raise a renewed question surrounding the Court's subject matter jurisdiction. In particular, the Defendants argue that the Promissory Notes at issue in this case have a combined value of just $66,000, which is below the monetary threshold necessary for invoking the Court's original diversity jurisdiction. The Court disagrees.

Initially, this argument was raised for the first time in the Defendants' reply, apparently in violation of the well-established rule against doing so. *See Colon v. City of New York*, No. 11-cv-173, 2014 U.S. Dist. LEXIS 46451, at *28-*30 (E.D.N.Y. Apr. 2, 2014) (collecting cases for the proposition that "[t]he Second Circuit has clearly stated that arguments raised for the first time in reply papers or thereafter are properly ignored").

In any event, this argument lacks merit. The Second Circuit has made clear that "[s]ince the diversity statute confers jurisdiction over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy

requirement." *Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) (citing *Snyder v. Harris*, 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969) ("[A]ggregation is permitted in cases in which a single plaintiff seeks to aggregate two or more claims against a single defendant")).

In this case, the Plaintiff has apparently aggregated the first, second, third, fourth, and sixth causes of action to arrive at a damages figure exceeding the $75,000 threshold. Contrary to the Defendants' contention, which is unsupported by a citation to relevant legal authority, there is nothing improper about this approach.

Accordingly, to the extent the Defendants seek to dismiss the amended complaint on the ground that it fails to sufficiently establish a basis for the Court's jurisdiction, their motion is denied.

C. As to Whether the Amended Complaint States a Plausible Claim Based on Defaults Under the Promissory Notes

As noted above, the amended complaint alleges that at least four discrete occurrences constituted Events of Default under the Promissory Notes:

(1) Endonovo's failure to issue shares of common stock upon delivery of the Plaintiff's January 21, 2016 Notice of Conversion, in violation of § 3.2 of the July Note;

(2) Endonovo's failure to repay any portion of the principal due on the August Note, in violation of § 3.1 of the August Note;

(3) Endonovo's failure to provide the Plaintiff with a fully-executed Irrevocable Transfer Agent Letter prior to replacing its existing transfer agent with Clear Trust LLC, in violation of § 3.15 of both Promissory Notes; and

(4) Endonovo's failure to cause Clear Trust LLC to honor the Plaintiff's Notice of Conversion and/or its affirmative directive to Clear Trust LLC not to honor the Plaintiff's Notice of Conversion, also in violation of § 3.2 of the July Note.

The Defendants set forth a two-part argument in support of dismissing the Plaintiff's first cause of action based on these alleged defaults.

First, the Defendants contend that the Promissory Notes have not fully matured, so that the principal amounts due under the Loan Agreements are not yet owed. Therefore, the Defendants argue that they cannot have defaulted on an obligation that is yet to arise. The Court disagrees.

Notwithstanding the specific maturity dates assigned to the Promissory Notes, the language contained in those instruments unambiguously provides that, upon the occurrence of any Event of Default, the amounts owed become immediately due and payable. Construing the alleged facts in favor of the Plaintiff, the Court concludes that the Defendants apparently failed to comply with various contractual obligations, each of which constituted an Event of Default, and therefore, an independent basis for accelerating the maturity date of the notes. Accordingly, the Defendant's motion to dismiss the first cause of action on this ground is denied.

Second, the Defendants contend that the payment instruments at issue in this case do not satisfy the legal definition of a "promissory note." In particular, the Defendants rely on New York appellate court cases they assert stand for the proposition that, in order to be valid, a promissory note must provide solely for the payment of money. Therefore, the Defendants argue that the convertible promissory notes at issue in this case, which provide for the payment of money, or, alternatively, an equivalent amount of stock, are not true promissory notes under the law. In the Court's view, this argument is misguided.

The cases relied upon by the Defendants, namely, *Lugli v. Johnston*, 78 A.D.3d 1133, 1134, 912 N.Y.S.2d 108 (2d Dep't 2010), and *Comforce Telecom, Inc. v. Spears Holding Co., Inc.*, 42 A.D.3d 557, 558, 840 N.Y.S.2d 145 (2d Dep't 2007), do not, as the Defendants contend, stand for the general proposition that a valid promissory note must call solely for the payment of money. Rather, in relevant part, those cases involve a provision of New York procedural law, namely, CPLR 3213, entitled "Motion for summary judgment in lieu of complaint," which states that, "[w]hen an action is based on an instrument for the payment of money only . . . the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."

This rule is premised on the view that genuine issues of fact for trial will generally be less likely to exist – and therefore, traditional litigation will be obviated – where the entire action is based on an instrument promising to pay a sum of money. *See* David D. Siegel, New York Practice § 288 (5th ed. 2011) ("CPLR 3213 recognizes that some claims have greater presumptive merit than others and should have easier access to the courts than an ordinary plenary action gets").

Thus, in *Lugli* and *Comforce*, applying CPLR 3213, the Appellate Division of the New York State Supreme Court considered only whether the promissory notes at issue in those cases constituted "instruments for the payment of money only" so that the plaintiffs would be entitled to summary judgment at the outset, rather than filing a complaint. However, CPLR 3213, and by extension, the cases cited by the Defendants, have no application here.

In the Court's view, it would be a bridge too far to read these cases as supporting the broad proposition that a payment instrument can never be considered a promissory note if it allows for the principal amount owed to be repaid in securities rather than traditional currency.

Nor can the Court endorse the ultimate conclusion that the Defendants apparently seek to draw, namely, that a cause of action based on a default under a promissory instrument fails, as a matter of law, simply because it calls for alternative methods of repayment, namely, by methods other than the payment of "money only."

Indeed, even where courts have found that the instrument at issue does not meet the "money only" standard under CPLR 3213, the result is not dismissal of the claim; it is simply that litigation regarding any disputed factual issues proceeds in the ordinary course. *See, e.g.*, *Alpha Capital Anstalt v. bioMetrix Inc.*, No. 26036/2009, 2010 NY Slip Op 30045(U), 2010 N.Y. Misc. LEXIS 1265, at *2, *12 (Suffolk Cnty. Sup. Ct. Jan. 6, 2010) (in a case involving a similar convertible promissory note, denying a motion for summary judgment in lieu of a complaint under CPLR 3213 and directing that the motion papers be deemed the pleadings); *see also* Siegel, New York Practice at § 289 (noting that a

plaintiff who wishes to enforce commercial paper that does not precisely fit the requirements of CPLR 3213 may still "bring[ ] an ordinary action and simply wait[ ] until the answer is in" to make a motion on notice for summary judgment).

In this case, the Defendants fail to identify any authority for the proposition that a claim based on default is not cognizable at law simply because the instrument at issue permits payment to be made in the form of stock. Nor has the Court's independent research revealed any. Thus, even assuming, as the Defendants contend, that the Promissory Notes in question call for more than the payment of "money only," that fact alone cannot serve as a sufficient basis for dismissal under Rule 12(b)(6). Accordingly, the Defendants' motion to dismiss the first cause of action based on promissory note defaults is denied.

D.  **As to Whether the Amended Complaint States a Plausible Claim Based on Fraudulent Inducement**

The second cause of action alleges that the Defendants fraudulently induced the Plaintiff to enter into the Loan Agreements and Promissory Notes by falsely claiming that they intended to fully perform their contractual obligations, when, in actuality, they did not.

The Defendants appear to argue that this claim is impermissibly duplicative of the first cause of action based on promissory note defaults. In this regard, they rely on caselaw standing for the proposition that, in order "[t]o recover damages for fraud based on a contract, a plaintiff must prove a breach of a duty distinct from or in addition to the breach of contract." Defs. Memo of Law at 6 (citing *Courageous Syndicate, Inc. v. People-To-People Sports Committee, Inc.*, 141 A.D.2d 599, 600 (2d Dep't 1988)).

The general principle invoked by the Defendants is well-settled: "The Second Circuit has noted that, under New York law, where a fraud claim hinges on the same factual allegations as a breach of contract claim, with the additional allegation that the defendant intended to breach, 'the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'" *Rodriguez v. It's Just*

*Lunch, Int'l*, No. 07-cv-9227, 2010 U.S. Dist. LEXIS 16622, at *13 (S.D.N.Y. Feb. 23, 2010) (quoting *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).

However, the Defendants' duplicity argument fails to account for certain exceptions that have been carved out of the basic rule, including situations where, as here, the Plaintiff has alleged "a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Applying this exception, other courts in this Circuit have recognized that " 'a claim based on fraudulent inducement of a contract is separate and distinct from a breach of contract under New York law,' " *Rodriguez*, 2010 U.S. Dist. LEXIS 16622, at *14 (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007)), and therefore, a "fraudulent inducement claim satisfies the [ ] *Bridgestone* exception [stated above] and is not barred as duplicative of the breach of contract claim." *Id.*; *see Linares v. Richards*, No. 08-cv-3243, 2009 U.S. Dist. LEXIS 68753 (E.D.N.Y. June 22, 2009) (Report and Recommendation) (" 'A claim for fraudulent inducement[,]' however, 'is separate and distinct from a claim for breach of contract under New York law, and a plaintiff may plead both causes of action' " (quoting *Rosen v. Spanierman*, 894 F.2d 28, 35 (2d Cir. 1990)), *adopted*, 2009 U.S. Dist. LEXIS 66948 (E.D.N.Y. Aug. 3, 2009).

In the Court's view, though factually similar, the Plaintiff's first cause of action based on a promissory note default, and its second cause of action based on fraudulent inducement, implicate separate and distinct legal theories which may be pled together. Accordingly, the Defendant's motion to dismiss the second cause of action on this ground is denied.

However, even assuming that the fraudulent inducement claim is not barred, a closer question is whether, as the Defendants contend, the Plaintiff failed to plead this fraud-based claim with sufficient specificity to survive scrutiny under the heightened pleading standard found in Rule 9(b). The Court answers this question in the negative.

14

As noted above, crucial to a fraud-based claim is a sufficiently-detailed allegation regarding a misrepresentation made by the Defendants and relied upon by the Plaintiff. Sufficient detail in this context includes allegations by the Plaintiff which: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Although Rule 9(b) "permits plaintiffs to allege fraudulent intent generally," *HCFA Assocs. Corp. v. Grossman*, 960 F. Supp. 581, 585 (E.D.N.Y. 1997 (Spatt, J.), the Second Circuit has recognized that "'[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [the] claim,'" *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 622 N.E.2d 763 (1995)); *see AXA Versicherung AG v. N.H. Ins. Co.*, 348 F. App'x 628, 630 (2d Cir. 2009) ("While a misrepresentation that is collateral to the contract may support a fraud in the inducement claim distinct from a breach of contract, the non-disclosure of collateral aims, such as allegations about defendants' states of minds used to support the contention that they intended to breach the contract . . . is insufficiently distinct from the breach of contract claim" (internal citation, quotation marks, and alteration omitted)); *Space, Inc. v. Simonwitz*, No. 08-cv-2854, 2008 U.S. Dist. LEXIS 51782, at *17 (S.D.N.Y. July 8, 2008) (finding allegations that one party to a contract misrepresented its future intent to perform "is patently insufficient to support a claim for fraud under New York law").

In this case, the amended complaint contains no particularized allegations regarding any false representation other than the Defendants' overall assent to take part in the agreements. In this regard, the allegations of fraudulent inducement are vague, and amount to a single conclusory accusation that, because the Defendants breached their obligations under the Loan Agreements and the Promissory Notes, that must have been their intention all along. *See, e.g.*, Am. Compl. ¶¶ 34-35

(alleging, as a basis for the fraud claim, that the Defendants' falsely promised not to breach the contracts). Based on the authorities discussed above, this falls far below what is required under Rule 9(b).

Accordingly, the Defendant's motion to dismiss the second cause of action based on fraud in the inducement is granted. Having so held, the Court need not reach the Defendants' alternative argument based on *res judicata*.

E.     As to Whether the Amended Complaint States a Plausible Claim Based on Breach of Contract

The third and fourth causes of action allege that the Defendants breached their obligations under the Loan Agreements, entitling the Plaintiff to contractual remedies in the form of lost profits, attorneys' fees, and costs.

Here, again, the Defendants argue that these causes of action are duplicative of the first cause of action based on promissory note defaults. However, in the Court's view, the claims are clearly distinguishable inasmuch as the breach of contract claims apparently seek to enforce obligations and remedies under the Loan Agreements, whereas the first cause of action arose solely under the Promissory Notes.

The Defendants also substantively dispute the Plaintiff's entitlement to the damages it seeks. However, "[this] argument at best raises a factual dispute . . . which cannot be resolved on a Rule 12(b)(6) motion." *Navigant Consulting, Inc. v. Kostakis*, No. 07-cv-2302, 2007 U.S. Dist. LEXIS 74460, at *15 (E.D.N.Y. Oct. 4, 2007).

Accordingly, the Defendant's motion to dismiss the third and fourth causes of action based on breach of contract is denied.

F.     As to Whether the Amended Complaint States a Plausible Claim Based on Tortious Interference

The sixth cause of action alleges that the individual Defendant Collier personally caused the company to breach the Loan Agreements and default under the Promissory Notes. According to the

amended complaint, despite Collier's official position as the chief executive officer of Endonovo, he tortiously interfered with the contracts in question for his own personal benefit – specifically, "to maintain a higher . . . stock value for his own holdings," Am Coml. ¶ 60 – and not for the benefit of the corporation.

The Defendants argue that these allegations lack enough supporting facts to make it plausible that Collier is personally liable for the misconduct alleged. The Court disagrees.

"To state a claim for tortious interference with contract under New York law, a plaintiff must demonstrate 'the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *SymQuest Group, Inc. v. Canon U.S.A., Inc.*, No. 15-cv-4200, 2016 U.S. Dist. LEXIS 64432, at *17 (E.D.N.Y. May 16, 2016).

"In New York, officers, directors or employees of a corporation cannot be personally liable for inducing the corporation to breach a contract with a third party if they act on behalf of the corporation and within the scope of their duties." *Dagen v. Cfc Group Holdings*, No. 00-cv-5682, 2002 U.S. Dist. LEXIS 25767, at *76-*77 (S.D.N.Y. Mar. 7, 2002) (Report and Recommendation) (citing cases), *adopted*, 2003 U.S. Dist. LEXIS 1225 (S.D.N.Y. Jan. 24, 2003). "Personal liability will be imposed only if the plaintiff shows that the officer or employee acted outside the scope of his employment by committing an independent tort or by pursuing a personal interest." *Id.* at *77 (citing *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153 (1996)).

In this regard, "[a] cause of action seeking to hold corporate officials personally responsible for the corporation's breach of contract is governed by an enhanced pleading standard," namely, " 'a pleading must allege that the acts complained of, whether or not beyond the scope of the [officer's] corporate authority, were performed with malice and were calculated to impair the plaintiff's

business for the personal profit of the officer.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407-08 (S.D.N.Y. 2009) (quoting *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 109-10, 744 N.Y.S.2d 384 (1st Dep't 2002)).

Applying these standards, the Court finds that the amended complaint alleges sufficient facts to pass muster under Rule 12(b)(6).

Initially, it is undisputed that valid contracts, namely, the Loan Agreements, existed between the Plaintiff and Endonovo. It is further undisputed that Collier, as the chief executive officer of Endonovo and the individual who signed the Loan Agreements on behalf of the corporation, had actual knowledge of the contracts and their operative terms. *See* Kramer Aff., Ex. "B," at p. 23.

Further, construing the alleged facts in favor of the Plaintiff, the amended complaint sufficiently demonstrates that the Loan Agreements were actually breached when Endonovo failed to honor the Notice of Conversion; failed to provide the requisite notice of its change in stock transfer agent; and otherwise failed to comply with the repayment terms in the Promissory Notes. These alleged facts, if proven, would also sufficiently support the conclusion that the Plaintiff was damaged by the breaches.

Thus, the only remaining question is whether the amended complaint sufficiently alleges facts to make it plausible that: (1) Collier intentionally procured Endonovo's breach of the Loan Agreements; and (2) he did so in pursuit of a personal interest. In the Court's view, a review of the amended complaint requires this question to be answered affirmatively.

Consistent with its enhanced pleading burden under New York law, the Plaintiff specifically alleged that Collier "intentionally and with malice aforethought caused [Endonovo] to breach its contractual agreements"; and that, driven by a desire to preserve the value of his own personal assets, he acted "for his own financial benefit, and not for the benefit of [Endonovo]." Am. Compl. ¶ 59. In the Court's view, this is sufficient to state a claim for tortious interference with contract.

Accordingly, the Defendants' motion to dismiss the sixth cause of action based on tortious interference is denied.

G.     As to Whether the Amended Complaint States a Plausible Claim for Equitable Relief

Finally, the fifth cause of action seeks equitable relief in the form of a mandatory injunction compelling the Defendants to comply with their obligations under the Loan Agreements and the Promissory Notes.

The Defendants rely on principles of *res judicata* for their contention that equitable relief is barred in this case by the Court's prior holdings in the March Opinion. In particular, as described more fully above, the Court denied an earlier motion by the Plaintiff for provisional remedies, including a temporary restraining order and preliminary injunction, partly on the ground that the Plaintiff apparently would not suffer irreparable harm in the absence of preliminary equitable relief. Now, the Defendants argue that any claim for a permanent injunction is estopped for this same reason. The Court disagrees.

Although "Fed. R. Civ. P. 12(b)(6) is an appropriate procedural vehicle for testing a complaint with the defense of *res judicata*," *Hackett v. Storey*, No. 03-cv-395, 2003 U.S. Dist. LEXIS 23366, at *5-*6 (D. Conn. Dec, 30 2003), that doctrine only applies to "make[ ] a final, valid judgment conclusive on the parties . . . as to all matters, fact and law, [that] were or should have been adjudicated in [an earlier] proceeding," *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quotation marks and citation omitted)); *see Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987) (noting that "[r]es judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction . . . ").

Recognizing the limited scope of the doctrine, the Second Circuit has noted that preliminary injunctions are "tentative by nature," and therefore, orders resolving motions for such relief "[are]

not final judgment[s] for purposes of *res judicata*." *Shulz v. Williams*, 44 F.3d 48, 55 n.6 (2d Cir. 1994) (citing *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 273-74 (2d Cir. 1992)); *see Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644-45 (2d Cir. 1998) (collecting cases for the proposition that, "[o]rdinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial").

Guided by these authorities, the Court finds that its prior analysis of the Plaintiff's entitlement to preliminary equitable relief was not a final judgment sufficient to trigger the preclusive effect of the *res judicata* doctrine. Accordingly, the Defendants' motion to dismiss the fifth cause of action seeking equitable relief is denied.

### IV. CONCLUSION

Based on the foregoing, the Court grants in part and denies in part the Defendants' motion to dismiss the amended complaint.

In particular, for the reasons set forth above, to the extent the Defendants seek to dismiss the first, third, fourth, fifth, and sixth causes of action, their motion to dismiss is denied. However, to the extent the Defendants seek to dismiss the second cause of action based on fraudulent inducement, their motion to dismiss is granted.

This matter is respectfully referred to United States Magistrate Judge Anne Y. Shields for discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York
October 24, 2016

/s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge